# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| QUINCELL O. CONWAY, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 4:14 CV 1234 DDN |
| MICHAEL BOWERSOX, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner Quincell O. Conway for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

On April 8, 2011, petitioner Quincell O. Conway was charged in the Circuit Court of St. Louis County by information in lieu of indictment with one count of murder in the first degree (Count 1) and one count of armed criminal action (Count 2) for the September 10, 2009, shooting death of Samuel Lucas. (Resp. Ex. A at 7.) Following a pre-trial hearing, the court sustained the prosecutor's motion in limine to exclude during voir dire and defense counsel's opening statement any mention of evidence or argument that petitioner shot the victim in self-defense. (Id. at 3, 24-27.)

On May 16, 2011, pursuant to a plea agreement with the State, petitioner pled guilty to one count of murder in the second degree, a class A felony, and one count of

armed criminal action. (Id. at 12–29); No. 09SL-CR07664.[1] Following the guilty plea colloquy and the acceptance of the plea, the court proceeded to sentencing. The court sentenced petitioner to a term of twenty-five years' imprisonment for Count I and three years' imprisonment for Count II. These sentences were to be served concurrently with a previous sentence for an unrelated offense. (Id. at 29-30.)

On October 24, 2011, petitioner sought post-conviction relief under Missouri Supreme Court Rule 24.035 and requested an evidentiary hearing. (Id. 40–45.) On April 27, 2012, the circuit court denied the motion without an evidentiary. (Id. at 72–75); No. 11SL-CC04400.[2] On January 3, 2013, petitioner appealed the circuit court's decision to the Missouri Court of Appeals. (Resp. Ex. D.) The Missouri Court of Appeals affirmed the circuit court on July 16, 2013. (Resp. Ex. E); (Resp. Ex. F at 1); Appeal No. ED98558.[3]

On July 9, 2014, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court. (Doc. 1.)

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges three grounds for relief: (1) He received constitutionally ineffective assistance of counsel, because counsel failed to advise him that by pleading guilty he waived the right to appeal the preliminary rulings of the circuit court regarding the self-defense theory. (2) His attorney coerced him to plead guilty. (3) He received ineffective assistance of counsel, because counsel failed to advise him that self-defense was admissible at trial. (Doc. 1.)

---

[1] The undersigned takes judicial notice, under Federal Rule of Evidence 201, of the state court proceedings in petitioner's case as documented in Case.Net, http://www.courts.mo.gov/casenet (last visited February 26, 2015).

[2] See footnote 1.

[3] See footnote 1.

2

Respondent makes two arguments why the petition should be denied. First, petitioner did not file his habeas petition in a timely manner. (Doc. 11.) Second, the Missouri courts reasonably rejected all of petitioner's claims on the merits. (Id.)

### III. STATUTE OF LIMITATIONS

To obtain federal habeas relief, state prisoners must file their habeas petitions within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (2012) (Antiterrorism and Effective Death Penalty Act)(AEDPA).

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

On May 16, 2011, closely following his plea, petitioner was sentenced. (Resp. Ex. A at 3.) Petitioner did not directly appeal his conviction and sentence in the circuit court. In Missouri, a criminal judgment becomes final ten days after it is entered if it is not appealed. See Mo. Ct. R. 30.01(a); Mo. Ct. R. 81.04(a). Thus, the circuit court judgment against petitioner became final on May 26, 2011, and the AEDPA limitations period began to run.

3

The statutory limitations period ran for 151 days until petitioner filed his pro se motion for post-conviction relief under Missouri Supreme Court Rule 24.035 on October 24, 2011. (Resp. Ex. A at 40–46.) On July 16, 2013, the Missouri Court of Appeals issued its mandate affirming the circuit court's denial of the post-conviction relief. (Resp. Ex. F at 1.) On that date, the one-year limitations period began again and ran for another 214 days until it expired on February 15, 2014, some five months before petitioner filed his federal habeas petition on July 9, 2014.[4]

Therefore, petitioner's federal habeas corpus petition is untimely. Nevertheless, the court has considered the merits of petitioner's grounds for relief.

## IV. STANDARD OF REVIEW

Petitioner raised federal habeas Grounds 1, 2, and 3 in the Missouri circuit court in his motion for post-conviction relief. (Resp. Ex. A at 40–46.) The circuit court denied his motion. (Id. at 74–78.) Petitioner thereafter presented Grounds 1, 2, and 3 to the Missouri Court of Appeals. (Resp. Ex. B.) The appeals court affirmed the circuit court's decision. (Resp. Ex. E at 1.)

Where there are state court decisions on a federal habeas corpus petitioner's grounds for federal court relief, Congress requires that habeas relief not be granted by a federal unless the respective state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

---

[4] The petition itself is dated July 1, 2014 and the envelope is postmarked July 7, 2014. Further analysis to determine the exact date of filing is unnecessary as both of these dates are after the expiration of the federal statute of limitations period.

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 559 U.S. 43, 47 (2010) (per curiam) (citation omitted). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102–103 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S at 293.

## V. DISCUSSION

### A. Ground 1

Petitioner alleges he received constitutionally ineffective assistance of counsel, because his plea counsel failed to inform him that by pleading guilty he waived the right to appeal the trial court's preliminary ruling that prohibited evidence and argument on self-defense during voir dire and the opening statement.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. Petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985) (holding that the two-prong Strickland test applies to challenges to guilty pleas based on ineffective assistance

of counsel). First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. Id. at 690; Huls v. Lockhart, 958 F.2d 212, 215 (8th Cir. 1990). Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. Strickland, 466 U.S. at 687. To show prejudice, petitioner must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

> On this Ground 1, the Missouri Court of Appeals ruled as follows:
>
> The record shows that before [petitioner] entered his guilty plea, the court informed him he could appeal the trial court's findings if he pursued a trial, otherwise he waived such right. Because the court informed [petitioner] of his right to appeal any adverse judgment, and [petitioner] testified he understood that by entering his plea of guilty he waived his right to appeal and he understood the court's preliminary ruling was not a binding determination but could change at trial, the record conclusively refutes [petitioner's] allegation that he was not informed of his appeal rights. Therefore, the motion court properly denied [petitioner's] claim without an evidentiary hearing. Point denied.

(Resp. Ex. E, Doc. 11-5 at 8.)

The undersigned agrees with the Missouri Court of Appeals that the transcript of the guilty plea hearing plainly refutes petitioner's claim that he did not know he was waiving appeal rights. Petitioner's representations during his guilty plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

The transcript of the guilty plea hearing includes the following dialogue between the court and petitioner:

> THE COURT: With respect to Mr. Rosenblum [defense counsel], have you told him all the facts and circumstances surrounding these crimes?
>
> [PETITIONER]: Yes, sir.

6

THE COURT: Do you believe he's fully advised you of all legal aspects of your case, including your legal rights and the possible consequences of your plea of guilty?

[PETITIONER]: Yes, sir.

THE COURT: Are you entirely satisfied with his services?

[PETITIONER]: Yes.

THE COURT: Has he given you enough time to talk about the case?

[PETITIONER]: Yes.

\* \* \*

THE COURT: I need to explain certain rights that you give up when you plead guilty. One thing you give up is a right to a jury trial. And we were prepared to start the trial today. You know that?

[PETITIONER]: Uh-huh.

THE COURT: So when you plead guilty, you give up the right to try the case to the jury. Do you understand that?

[PETITIONER]: Yes, sir.

THE COURT: Let me talk to you about that. When you give up the right to a jury trial, you give up the right to have 12 people agree that you're guilty before they can find you guilty, the right to have Mr. Rosenblum [petitioner's counsel] represent you in the trial, the right to have the jury instructed throughout the trial that you're presumed to be innocent, and the State has the burden to prove you guilty beyond a reasonable doubt, the right to testify or not to testify, with no comment being made about the fact that you're not testifying, the right to call, subpoena and cross- examine witnesses, *the right to appeal any adverse judgment that would come out of the trial to some other court. Those are specific legal rights involved with a jury trial that you give up when you plead guilty. Do you understand that?*

[PETITIONER]: Yes.

(Doc. 11-1, Resp. Ex. A at 24–26.) (emphasis added).

Then, petitioner's plea counsel stated on the record that he had advised petitioner of the trial court's decision to exclude evidence of self-defense during voir dire and the opening statement. The transcript includes the following exchange between the court, petitioner's counsel, and petitioner:

> THE COURT: Right. What happened was Mr. Rosenblum explained—This was a motion in limine which actually had been filed today, so it had check marks, meaning I was going to go along with those particular points. And five is the one that talks about prior threats. Then we talked about self defense. And the Waller case is cited at 816 SW2d 212 by the prosecutor.
>
> So, as I recall, we were discussing these motions, which we're supposed to do before the trial so that illegal evidence doesn't come in. And Mr. Rosenblum explained—I had to decide, based on the motion, whether self defense could be argued in the opening statement by the party and whether certain other evidence consistent with self defense could be brought up in the opening statement. So this was the appropriate time to make preliminary rulings on this. And Mr. Rosenblum and Mr. Larner [the prosecutor] explained what they expected each of their evidence to be along those lines, including what the videotape showed to the State and what your testimony is.
>
> Mr. Rosenblum explained—understood it from a self defense point of view; in other words, the best testimony for you that he thought it was going to be. That doesn't mean it would absolutely be that, but that's what he understood it to be. So I said, based on what the State says the evidence is with respect to self defense and based on what Mr. Rosenblum thinks your evidence would be, the way he thought it would come out in the trial, I ruled based on that evidence I would not allow self defense because this guy was running away, basically, when he's shot.
>
> \*\*\*
>
> THE COURT: Mr. Rosenblum didn't commit to anything. He's just saying, this is what I think the evidence is. And these are motions in limine, so they can be changed during the trial. But if that's what your evidence was going to be, I probably wouldn't change it. If your evidence changed, I might change it.
>
> Mr. ROSENBLUM: Right. I mean, based on the tape and based on what I represented to the Court, our evidence would be through Mr. Conway and

through Darren Keith, I believe his name is, that your ruling was that you were not going to allow self defense. Obviously, you can't completely prohibit a defense until you hear the evidence, but based on what we told you the evidence was and the controlling case law, it was at that point where you said we certainly weren't going to be allowed to talk about it in opening statement and jury selection. And unless something drastically changed, we weren't going to be allowed to talk about it at all.

THE COURT: Right. If that was the evidence, which I don't have any reason to think it isn't, that would probably be the ruling of the Court; whereas, if the evidence changed somehow, it could change. Do you understand what we're saying basically?

[PETITIONER]: Uh-huh. Yes, sir.

THE COURT: Okay. So based on all that, Mr. Conway, are you stating and admitting that you're guilty voluntarily and of your own free will because you actually committed the amended charge of murder second degree and the armed criminal action?

[PETITIONER]: Yes.

(Doc. 11-1, Resp. Ex. A at 26–28.)

Here, the record shows that before petitioner entered his guilty plea, the court and petitioner's counsel explained—and petitioner testified he understood—that the trial court's ruling on self-defense was not final and could change at trial. The record contradicts petitioner's claim that he pled guilty based on the mistaken belief (which he alleges was based on advice from counsel) that he could appeal the court's ruling on the motions in limine even if he pled guilty. The record shows that petitioner was informed of his appeal rights.

Because counsel (and the court) informed petitioner of his appeal rights, petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness. Petitioner fails to overcome the strong presumption that counsel has rendered constitutionally effective assistance.

The decision of the Missouri Court of Appeals was a reasonable application of federal law to the facts that are supported by the record.

Ground 1 is without merit.

**B. Ground 2**

Petitioner alleges ineffective assistance of counsel, because his plea counsel pressured or coerced him to plead guilty despite his desire to go to trial. Specifically, petitioner argues that, even though he wanted to go to trial and argue that he shot the victim in self-defense, he entered his guilty plea because his plea counsel coerced him and led him to think that evidence of self-defense would never be admissible.

The Strickland test is also applicable to Ground 2. Here, petitioner fails to prove that counsel's performance fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 687–88.

On this ground, the Missouri Court of Appeals decided:

> The record . . . shows the [that the circuit] court informed [petitioner] that its ruling on the State's motion in limine was not a final decision and the court could change its decision during trial based on the evidence presented. [Petitioner] replied he understood the court could not prohibit the defense of self-defense before hearing all the evidence at trial. Concerning [petitioner's] allegations of coercion, [petitioner] further testified:
>
>> THE COURT: Has anyone threatened you, intimidated you, mistreated you[] or any member of your family or in any way forced you to plead guilty against your will?
>>
>> THE DEFENDANT: No.
>>
>> THE COURT: Or told what you [were] to say here [] today, other than the truth? Has anyone ever told you to say anything other than the truth today?
>>
>> THE DEFENDANT: No.
>
> The questions posed and responses elicited by the judge show [petitioner] had ample opportunity to indicate he was being coerced or pressured to plead guilty yet he did not, even though his counsel's alleged coercion would have been known to him at the time he entered his plea of guilty. Instead, [petitioner] unequivocally pled guilty of his own free will.

[Petitioner's] assertion that his attorney pressured him to enter a guilty plea is therefore conclusively refuted by the record. Point denied.

(Doc. 11-5, Resp. Ex. E, Memorandum Supplementing Order at 8.)

The undersigned agrees with the Missouri Court of Appeals that the transcripts of the guilty plea and sentencing proceedings plainly refute petitioner's claim that he was coerced into pleading guilty. As the record reproduced above shows, the court informed petitioner that its ruling on prohibiting evidence and argument of self-defense was not a final decision, and petitioner indicated that he understood that the court could not prohibit using a self-defense argument before hearing all of the evidence at trial. (Resp. Ex. A at 29–31.) Because petitioner understood that a self-defense argument could possibly be admissible, this cannot serve as a basis for coercion. Petitioner's argument finds no support in the record.

Further, the circuit court questioned petitioner under oath about his satisfaction with counsel's performance. (Resp. Ex. A at 24–25.) Petitioner testified that he was satisfied with counsel's performance and that he did not have any complaints or criticisms regarding the performance. (Id.) Petitioner did not testify that he felt that he was pressured or that he was coerced into pleading guilty against his will. Moreover, petitioner testified as follows:

> THE COURT: Has anyone threatened you, intimidated you, mistreated you or any member of your family or in any way forced you to plead guilty against your will?
>
> [PETITIONER]: No.

(Doc. 11-1, Resp. Ex. A at 23-24.)

The record plainly contradicts petitioner's allegations in Ground 2. The decision of the Missouri Court of Appeals is a reasonable application of federal law to the facts eminently support by the record.

Ground 2 is without merit.

## C. Ground 3

Petitioner alleges that his guilty plea was not knowingly and voluntarily made. Specifically, petitioner alleges that the trial court and his counsel misled him into believing that he could not use a self-defense theory if he took the case to trial.

In order to satisfy due process requirements, a guilty plea must be a voluntary, knowing, intelligent act. Brady v. U.S., 397 U.S. 742, 748 (1970). A court has the duty to ensure that a guilty plea is made intelligently and voluntarily. Godinez v. Moran, 509 U.S. 389, 400 (1993). "The purpose of the 'knowing and voluntary inquiry' ... is to determine whether the [petitioner] understand[s] the significance and consequences of a particular decision and whether the decision is uncoerced." Id. at 401 n.12. Specifically, courts are required to "[canvass] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin v. Alabama, 395 U.S. 238, 244 (1969).

On this ground for relief, the Missouri Court of Appeals considered that the circuit court at the plea hearing told petitioner it could change its ruling on the use of self-defense at trial and that petitioner testified he understood that and that he wished to plead guilty of his own free will. The state appellate court concluded that petitioner knowingly and voluntarily pled guilty and waived his right to appeal the trial court's ruling regarding evidence of self-defense. (Doc. 11-5, Resp. Ex. E at 9.)

The record establishes that petitioner understood the significance and consequences of his guilty plea. The trial court explained the preliminary nature of its ruling prohibiting self-defense evidence. (Id., Resp. Ex. A at 14–16.) The trial court further explained that the ruling could change and that a final ruling on the self-defense argument is only possible after hearing the evidence at trial. (Id.) After hearing that explanation, petitioner still chose to plead guilty. (Id. at 16.)

Further, petitioner has failed to show that his guilty plea was not voluntary. As explained above in Ground 2, the record refutes petitioner's claim that he was coerced into pleading guilty.

Therefore, the ruling by the Missouri Court of Appeals that petitioner intelligently and knowingly entered his plea of guilty was a reasonable application of federal law to the clear factual record.

Ground 3 is without merit.

## VII.  CONCLUSION

For the reasons stated above, the petition of Quincell O. Conway for a writ of habeas corpus is denied.  Because petitioner has made no substantial showing of the denial of a constitutional right, the court does not issue a certificate of appealability.  28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.



      /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**


Signed on May 22, 2015.